IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BARLETT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

WILLIAM E. BARLETT, APPELLANT.

Filed July 28, 2026.    No. A-25-846.

Appeal from the District Court for Nance County: RACHEL A. DAUGHERTY, Judge. Affirmed.

Chad J. Wythers for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, Chief Judge, and MOORE and PIRTLE, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

William E. Barlett appeals his conviction in the district court for Nance County for third degree domestic assault on a pregnant woman. Barlett challenges the district court's failure to instruct the jury on self-defense and asserts that his trial counsel was ineffective. Based on the reasons that follow, we affirm.

## II. BACKGROUND

Barlett was charged with third degree domestic assault on a pregnant woman, a Class IIIA felony, and attempted strangulation on a pregnant woman, a Class IV felony. The victim was Barlett's girlfriend, Brittanie R. Barlett pled not guilty to the charges and the case proceeded to a jury trial.

- 1 -

At trial, the evidence established that at the time of the incident at issue, Brittanie and Barlett had been in a dating relationship for nearly four years and shared a residence. They had a 3-year-old daughter named Piper, and Brittanie was 30 weeks pregnant with their second child. Brittanie testified that she and Barlett argued frequently, and Barlett often threatened to kick her out of the residence and take Piper away from her.

Brittanie testified that in the early morning hours on February 3, 2025, Barlett was playing a video game online, as well as participating in a video stream in which people paid money to watch him drink alcohol. Piper had misbehaved, so Brittanie put Piper in her bedroom for a timeout, with the door open but blocked by a baby gate. Brittanie took a shower and when she returned, Piper began fussing at the gate. Barlett tried to placate her but was unsuccessful and Piper started having a "full-blown tantrum." Barlett left Piper in her room, shut the door, and went back to playing his video game. Brittanie testified she was concerned about leaving Piper unattended in her room with the door shut so she brought Piper into the living room to calm her down. Brittanie testified that when Barlett discovered what Brittanie had done, he became upset and accused her of undermining his authority as a father. Because Brittanie did not want to argue with Barlett, she returned Piper to her bedroom.

Brittanie testified that she tried to separate herself from Barlett by going out to the enclosed front porch to smoke a cigarette, but Barlett followed her and a verbal argument ensued. When she was standing with her back to the door that leads outside, Barlett got in her face and grabbed her by the throat. He shoved her against the door and held her there by the throat while he continued to yell at her. His hand was underneath her chin, up against her jawline. Brittanie testified that he shoved her with enough force that the back of her neck slammed against the door and caused pain to shoot down her spine. She grabbed his wrist and tried to get his hand off her, but he was too strong. Brittanie testified she was able to talk when Barlett had his hand around her throat. She testified she did not believe he was trying to strangle her, but, rather, was trying to intimidate her. She further explained she did not know his intentions but "this was a bridge [they had] never crossed before."

Brittanie also testified she was holding her phone and had it ready to record the incident. She wanted to record what he was saying so he could not later deny what he had said to her. When Brittanie tried to start recording, the camera on the phone flashed and Barlett realized she was trying to record the incident. Brittanie testified at that point, Barlett released his hand from her throat, grabbed her arm, and tried to take her phone. She put her hand that was holding the phone behind her back and a struggle ensued. Brittanie tried to push Barlett away, but Barlett got the phone from her. She also testified that during the struggle for her phone, she tried to burn him with her cigarette to get him away from her. Barlett took the phone inside the home and retrieved a hammer, threatening to smash the phone, but did not do so. He did, however, delete two videos on Brittanie's phone before returning it to her.

Brittanie testified she went back to the porch and used her phone to take pictures of the marks on her neck and her arm. The pictures were admitted into evidence. Brittanie later pretended to go to sleep on the couch. After Barlett fell asleep in the bedroom, Brittanie gathered some personal effects and left the residence with Piper. She then drove to the sheriff's office and called 911 to report the assault.

When asked to describe her injuries from the physical altercation, Brittanie testified she had swelling and stiffness in her throat, the back of her neck was sore, she had nerve pain shooting down her spine and had "Braxton Hicks contractions" a few days later. She had pain and stiffness whenever she turned her head to the left or right for about a week after the incident.

Matthew Milby was the Nance County Deputy Sheriff who met Brittanie when she arrived at the sheriff's office. After Brittanie recounted what had happened between her and Barlett, Milby took pictures of the marks on Brittanie's neck and her arm. The pictures were admitted into evidence. He also retrieved the two videos that Barlett had deleted from Brittanie's phone.

Milby contacted Barlett by telephone and asked him to come to the sheriff's office to make a statement. During the conversation, Barlett acknowledged there had been a "shoving match." Barlett initially refused to come in but agreed after the officers told him they would get a warrant for his arrest.

Milby testified that when Barlett arrived at the sheriff's office, he was arrested, and after waiving his *Miranda* rights, he agreed to be interviewed. Barlett told Milby he and Brittanie had been arguing about parenting and he felt undermined. Brittanie went outside to the porch and Barlett followed her and the argument continued. Barlett told Milby that a "shoving match" occurred, and at some point, he put his right hand up to Brittanie's neck for about a minute, pinning her against the door, to get her to calm down. Barlett reported that Brittanie was the initial aggressor in the physical altercation. Milby asked Barlett about a bruise on Brittanie's left arm, and Barlett suggested it was caused by him grabbing her arm when he was trying to take her phone and they were wrestling for it. The interview ended when Barlett received a call from his attorney.

Barlett testified in his own defense. He testified that prior to the incident, Piper was in her bedroom standing by the gate and was screaming. Barlett testified that he and Brittanie started arguing about how to discipline Piper when "she's doing stuff wrong," and Brittanie "stormed off."

Barlett followed Brittanie out to the porch and they were both screaming and cussing at each other. He approached Brittanie as she was standing with her back against the door and he stood about a foot away from her. At that point, Brittanie shoved him in the stomach, causing him to lose his balance, and he stumbled into her. Barlett testified that when he lost his balance, he grabbed Brittanie's right shoulder with his left hand and her left arm with his right hand, trying to pull himself up. He stated that during this, Brittanie was still shoving him in the stomach. He believed she shoved him about four times. He took his hand off her arm and "tried to place it on her chest" but "caught it high on her chest towards her throat." He kept his hand in that position for 30 to 60 seconds. He stated he was trying to push away from her and get control of the situation. Brittanie let go of his arm and calmed down and at that point, he removed his hand from her and stepped back.

Barlett testified that after they separated, Brittanie picked up her cell phone and Barlett saw the camera on the phone flash twice. He tried to grab the phone and she put it behind her back. He "yanked the phone out of her hand" and backed away. He deleted the two videos she had taken and put the phone in his pocket and went inside the residence. He denied threatening to smash the phone after he took it and later returned the phone to Brittanie.

Barlett testified that he went to the sheriff's office the next morning. He told law enforcement there had been a "shoving match" between him and Brittanie. When asked to explain

what he meant, he testified that Brittanie was shoving him and when he was able to get his arm up, he "managed to shove against her and push her back to the back." Barlett also testified that law enforcement asked him about a mark on Brittanie's arm and he said Brittanie might have hit the back of her arm on a piece of trimwork during the struggle for the phone.

On cross-examination, Barlett agreed that he told law enforcement that he put his hand around Brittanie's neck to calm her down. He also stated that when this happened, he was off balance and was pushing her away from him. He did not mean to "catch her in the neck"; he was trying to get her chest. He was just holding her back. Barlett admitted that his hand was "low on her neck."

Barlett also testified on cross-examination that the bruise on Brittanie's left arm was from him grabbing onto her when he lost his balance after she shoved him.

Barlett denied that he knowingly or intentionally threatened bodily injury to Brittanie, or knowingly or intentionally caused bodily injury to Brittanie.

The jury found Barlett guilty of third degree domestic assault on a pregnant woman, and not guilty of attempted strangulation on a pregnant woman. The court accepted the verdicts and entered judgment accordingly. It subsequently sentenced Barlett to 36 months' probation, to include 90 days in jail.

## III. ASSIGNMENTS OF ERROR

Barlett assigns the district court erred in denying his request for a jury instruction on self-defense. He also assigns that his trial counsel was ineffective in (1) failing to request a jury instruction on attempted third degree assault on a pregnant woman and (2) failing to properly question him when testifying to establish sufficient evidence to warrant an instruction on self-defense.

## IV. STANDARD OF REVIEW

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Logan*, 320 Neb. 554, 28 N.W.3d 510 (2025).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. JURY INSTRUCTION ON SELF-DEFENSE

Barlett first assigns the district court erred by failing to instruct the jury on self-defense. Before the case was submitted to the jury, Barlett requested a self-defense jury instruction, which the court denied because the evidence did not support it.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction was a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced

by the court's refusal to give the tendered instruction. *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023). As discussed below, we determine that Barlett's tendered instruction on self-defense was not warranted by the evidence and therefore, we need not consider whether the instruction was a correct statement of the law or whether Bartlett was prejudiced by the court's refusal to give the instruction.

Self-defense is a statutorily defined affirmative defense in Nebraska. *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020). Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) provides, in relevant part, that "the use of force upon or toward another person is justifiable when the actor believes such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." The Nebraska Supreme Court has interpreted § 28-1409 to mean that to successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force and the force used in defense must be immediately necessary and justified under the circumstances. *State v. Case, supra.*

The nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense. *State v. Liech*, 320 Neb. 843, 30 N.W.3d 847 (2026). When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove. *Id*. But if the trial evidence does not support a claim of self-defense, the jury should not be instructed on it. *Id.*

The Supreme Court has often said that a trial court must instruct the jury on self-defense when there is any evidence adduced which raises a legally cognizable claim of self-defense. *Id.* However, the court has further explained that only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense. See *id.* In other words, it is only when the evidence does not support a legally cognizable claim of self-defense, or when the evidence is so lacking in probative value that it constitutes a failure of proof, that a trial court may properly refuse to instruct a jury on a defendant's theory of self-defense. *Id.*

Barlett denied knowingly or intentionally causing Brittanie bodily injury. He testified that the only reason he placed his hands on Brittanie's throat and arm was to catch his balance after Brittanie shoved him in the stomach. He testified that when Brittanie pushed him, he lost his balance and stumbled toward her. He claimed he grabbed her left shoulder and right arm for the sole purpose of trying to hold himself up. He subsequently moved his hand off her arm and tried to place it on her chest, but it ended up "high on her chest towards her throat."

On cross-examination, Barlett agreed that he told law enforcement that he put his hand around Brittanie's neck to calm her down. He also stated that when this happened, he was off balance and was pushing her away from him. He did not mean to "catch her in the neck"; he was trying to put his hand on her chest. Accordingly, Barlett claims his initial contact with Brittanie's throat was unintentional, possibly accidental.

There was no evidence that Barlett put his hands on Brittanie for the purpose of protecting himself against Brittanie's use of unlawful force. Barlett's version of events did not support a self-defense jury instruction. His first assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Barlett is represented by different counsel on appeal and claims his trial counsel was ineffective in two respects. We first set forth the legal framework for ineffective assistance of counsel claims and then address Barlett's specific claims.

### (a) Legal Principles

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question under the standard previously noted. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mabior, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Id.*

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the issue. *Id.* The record on appeal is sufficient to effectively review the question of ineffective assistance if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

### (b) Failure to Request Jury Instruction on Attempt

Barlett assigns his trial counsel was ineffective in failing to request a jury instruction on attempted third degree domestic assault on a pregnant woman. He argues the evidence supported such a request, especially after the request for a self-defense instruction was denied.

To be guilty of an attempt, a person must *intentionally* engage in conduct constituting a substantial step toward the completion of the underlying crime. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017) (emphasis in original).

A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021).

The evidence in this case did not produce a rational basis for acquitting Barlett of the greater offense of third degree domestic assault on a pregnant woman and convicting him of the lesser offense of attempted third degree domestic assault on a pregnant woman. Stated differently, the facts in this case do not support the conclusion that Barlett could be guilty of attempted third degree domestic assault but not third degree domestic assault. The evidence established a completed assault, not merely an attempted assault. It is not prejudicial error to fail to instruct upon a lesser-included offense when the evidence entirely fails to show an offense of a lesser degree than that charged in the information. *State v. Johnson*, 261 Neb. 1001, 627 N.W.2d 753 (2001).

Accordingly, the record establishes that Barlett's trial counsel was not deficient in failing to request a jury instruction on the lesser-included offense of attempted third degree domestic assault on a pregnant woman. This ineffective assistance of counsel claim fails.

(c) Failure to Elicit Testimony to Support Self-Defense Instruction

Barlett assigns his trial counsel was ineffective in failing to properly question him to establish sufficient evidence to warrant an instruction on self-defense. Specifically, he argues his counsel failed to elicit sufficient testimony to show that Brittanie was the initial aggressor and that he grabbed her for the sole purpose of getting her to stop shoving him. He further alleges counsel failed to elicit testimony to show that Brittanie tried to burn him with her cigarette when he was trying to get Brittanie's phone and that any injuries to Brittanie occurred during the fight for her phone. He claims that had those facts been adduced, the district court would have provided a self-defense instruction.

We determine Barlett's counsel did adduce evidence of the facts Barlett alleges were not brought before the jury. Barlett testified that Brittanie pushed him up to four times and explained his actions that followed. Brittanie testified that she tried to burn Barlett with her cigarette, and Barlett explained how Brittanie's arm was bruised during the fight for the phone. Barlett cannot show that his trial counsel was deficient in questioning Barlett when he testified. Accordingly, this claim of ineffective assistance of counsel fails.

VI. CONCLUSION

We conclude the district court did not err in failing to instruct the jury on self-defense and that Barlett's ineffective assistance of counsel claims fail. Accordingly, Barlett's conviction for third degree domestic assault on a pregnant woman is affirmed.

AFFIRMED.